**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA LOCAL UNION 1613, <br><br>    Plaintiff, <br><br> vs. <br><br> ENERGY MANUFACTURING COMPANY INC., <br><br>    Defendant. | No. 15-CV-28-LRR <br><br> **ORDER** |

_____

### *TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.  PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III. SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . *2*

*IV.  SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . *2*

*V.   RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . *3*
   *A.   Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
   *B.   Overview of the Dispute* . . . . . . . . . . . . . . . . . . . . . . *4*
      *1.   Bankruptcy proceedings* . . . . . . . . . . . . . . . . . . *4*
      *2.   2012 termination and arbitration* . . . . . . . . . . . *5*

*VI.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
   *A.   Judicial Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
      *1.   Judicial estoppel of Chapman* . . . . . . . . . . . . . *10*
      *2.   Judicial estoppel of UAW* . . . . . . . . . . . . . . . *13*
   *B.   Entitlement to Arbitration* . . . . . . . . . . . . . . . . . . . *16*

*VII. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

## I. INTRODUCTION

The matter before the court is Defendant Energy Manufacturing Company Inc.'s ("EMC") "Motion for Summary Judgment" ("Motion") (docket no. 13).

## II. PROCEDURAL HISTORY

On February 23, 2015, Plaintiff International Union, United Automobile, Aerospace and Agricultural Implement Workers of America Local Union 1613 ("UAW") filed a Petition in the Iowa District Court for Jones County ("Complaint") (docket no. 3) alleging that EMC breached an agreement between the parties to arbitrate the issue of Grievant Steve Chapman's entitlement to back pay. Complaint ¶ 10. On March 30, 2015, EMC removed the case to this court. *See* Notice of Removal (docket no. 2). On April 2, 2015, EMC filed an Answer (docket no. 6). On January 13, 2016, EMC filed the Motion. On January 29, 2016, UAW filed a Resistance (docket no. 15). On February 5, 2016, EMC filed a Reply (docket no. 17). The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has jurisdiction pursuant to 29 U.S.C. § 185(a), which provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)), *cert. denied*, 132 S. Ct. 1144 (2012). "[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010).

"To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (second alteration in original) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted). The court must view the record in the light most favorable to the non-moving party and afford it all reasonable inferences. *See Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). The non-moving party "has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 886 (8th Cir. 2013) (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013)) (internal quotation marks omitted). "A complete failure by the non-moving party 'to make a showing sufficient to establish the existence of an element essential to that party's case . . . necessarily renders all other facts immaterial.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)) (alteration in original).

## V. RELEVANT FACTUAL BACKGROUND

Viewing the evidence in the light most favorable to UAW and affording it all reasonable inferences, the uncontested material facts are as follows.

### A. Parties

UAW is a labor organization that represents employees in an industry affecting commerce. UAW represented the bargaining unit employees of EMC. EMC is "a

corporation authorized to do business and doing business in" Monticello, Jones County, Iowa. Complaint ¶ 2.

## B. Overview of the Dispute

The relationship between EMC, UAW and the EMC employees is governed by a Labor Agreement. *See* EMC Appendix ("EMC App'x") (docket no. 13-3) at 62; *see also id.* at 59. The Labor Agreement provides for a grievance procedure, "whereby UAW can grieve and ultimately arbitrate disputes with EMC, on the behalf of EMC employees." EMC Statement of Material Facts (docket no. 13-1) at 1; *see also* EMC App'x at 76-78. Article 13 of the Labor Agreement provides that "[i]n the event that any grievance cannot be satisfactorily settled under the [grievance] procedure, the Union may submit such grievance to arbitration for final and binding settlement . . . ." *Id.* at 77. The Labor Agreement also sets forth deadlines and terms governing arbitration between UAW and EMC. *See id.* at 76-78.

Chapman is an employee of EMC and a member of UAW. He has worked at EMC for the past twenty-nine years. In 2008, EMC terminated Chapman from his position. UAW grieved the termination on Chapman's behalf under the just cause provision in the Labor Agreement. Following an arbitration hearing, Chapman was reinstated to his position with back pay, but put on a "last chance warning." *See id.* at 102, 126. Chapman received his back pay check directly from EMC, and it was made payable to Chapman, with taxes and union dues removed. In May of 2012, EMC terminated Chapman's employment again.

### 1. Bankruptcy proceeding

In August of 2012, following his termination from EMC, Chapman filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Iowa. Chapman was represented by counsel in his bankruptcy proceeding. At the time of filing "his bankruptcy petition, Chapman was aware that he had a grievance pending

regarding the termination of his employment. Chapman believed at the time that the resolution of the grievance might result in him getting his job back and receiving back pay." EMC Statement of Material Facts at 2. Chapman's bankruptcy petition did not include the claim against EMC. During the bankruptcy hearing, the Chapman engaged in the following exchange:[1]

> [Question]: Do you have any claims against anyone, the right to sue anybody for anything?
>
> Chapman: Um, well the union is fighting for my job back, that's the only thing.
>
> [Question]: Okay. But nothing other than that?
>
> Chapman: No.

EMC App'x at 55. At the bankruptcy hearing, Wesley B. Huisinga was appointed as the bankruptcy trustee. Huisinga "certified that the estate had been fully administered and that $118,629.95 in claims were scheduled to be discharged without payment." EMC Statement of Materials Facts at 3. On November 28, 2012, Chapman's Chapter 7 bankruptcy was discharged.

### 2. *2012 termination and arbitration*

Kevin Visser, a Cedar Rapids attorney, represented EMC in the 2008 and 2012 arbitration proceedings regarding Chapman's employment. Timothy Schnell served as the international representative for UAW from approximately 1999 through May of 2015. Schnell represented EMC's union employees from approximately 2012 though May of 2015. Visser and Schnell represented EMC and UAW, respectively, with respect to the 2012 Chapman arbitration.

---

[1] EMC states that Chapman's exchange was with Chief United States Bankruptcy Judge Thad Collins. *See* EMC App'x at 3, 55. However, UAW states that Chapman's statements were made at the Section 341 Meeting of Creditor's Hearing to Trustee Huisinga, not to Judge Collins. *See* Brief in Support of Resistance (docket no. 15-1) at 1. The court will analyze the statements as being made generally to the bankruptcy court.

Upon UAW's filing of the Chapman grievance, "a dispute arose between EMC and UAW as to the scope of the issue to be arbitrated." *Id*. at 4. The dispute concerned whether the arbitration award in 2008 "had the authority to impose a last chance letter that would extend beyond the period when discipline typically dropped off of an employee's record under the Collective Bargaining Agreement." *Id*. Visser and Schnell engaged in back and forth communications regarding the scope of the question to be presented to the arbitrator. On March 4, 2013, Visser sent a letter to Schnell regarding Chapman's bankruptcy proceeding and the fact that Chapman did not disclose the claim against EMC to the bankruptcy court. In the letter, "Visser proposed limiting the scope of the arbitration to exclude the back pay issue in order to avoid potentially complicated litigation in which EMC would seek to reopen Chapman's bankruptcy estate . . . ." *Id*. at 5. Schnell agreed that the bankruptcy ruling was beyond the scope of the arbitration "and would be a matter for . . . Chapman and his attorney to resolve." *Id*. Visser agreed to defining the scope of the arbitration to include "[w]hether Chapman was subject to a 'last chance' letter and violated that last chance . . ." and "[if] he was not subject to the last chance," whether EMC had just cause for terminating him. EMC App'x at 114. However, Visser then stated that UAW and EMC "must agree that Chapman may not, in any event, recover any remedy other than reinstatement through this limited arbitration. Specifically, we must agree that Chapman has no right to recover backpay in any amount." *Id*. On May 22, 2013, Schnell stated that "[UAW] does not agree to waive any claim to back pay under the arbitration remedy." UAW Appendix ("UAW App'x") (docket no. 15-2) at 4. In June of 2013, the parties had not yet reached an agreement on how to proceed with the issue of back pay. Schnell then brought in Matthew Petrzelka, an attorney, to represent UAW with respect to the arbitration. On August 1, 2013, Visser and Petrzelka sent a letter to Arbitrator Jeffrey Winton regarding the scope of the arbitration and stating that "the parties are agreed that the remedy of back pay is beyond

6

the scope of arbitration, but the arbitrator is empowered to order reinstatement." EMC App'x at 118.

In late August of 2013, the parties discussed selecting a new arbitrator and eventually settled on Arbitrator James O'Brien. In February of 2014, the parties informed Arbitrator O'Brien that "the remedy of backpay is beyond the scope of arbitration." EMC Statement of Facts at 7. On June 17, 2014, the arbitration hearing was held. Prior to the start of the hearing, Visser and Petrzelka discussed the back pay issue. At the opening of the arbitration hearing, Arbitrator O'Brien stated: "[o]n the issue of back pay, the parties have agreed that any award of back pay is beyond the scope of this arbitration and will be considered at another time and place, if necessary." UAW App'x at 7. Neither Visser nor Petrzelka made any comment on the record regarding this statement. The parties continue to dispute whether UAW waived the issue of back pay or whether EMC understood that UAW wanted to "bifurcate the issue for arbitration." *See* EMC Response to UAW Statement of Facts (docket no. 17-2) at 3. On July 25, 2015, Arbitrator O'Brien issued his Grievance Arbitration Award, finding in favor of Chapman and reinstating him to his position at EMC. *See* EMC App'x at 132.

Following the arbitration, Visser sent a letter to Petrzelka restating EMC's position that Chapman could not seek back pay. In the letter, Visser stated the following:

> I understand that . . . Chapman may be inquiring of the union about making a claim for back pay against [EMC]. He filed bankruptcy in August of 2012. As of that date, he swore under oath in his bankruptcy filings that he did not have any claims or causes of action against any entity. In other words, at no point did he disclose to the bankruptcy court or the bankruptcy trustee that he might have a claim for back pay against [EMC]. It was on the basis of his sworn verification of his schedules, and testimony at the section 341 hearing, that he was granted a bankruptcy discharge. For . . . Chapman to now claim an entitlement of back pay would raise issues relative to his truthfulness on his bankruptcy schedules and

7

> whether he was, in fact, entitled to his bankruptcy discharge. Granting . . . Chapman the benefit of the doubt, the omission of the claim from his bankruptcy schedules was confirmation of the parties' previous understanding that [he] was entitled to either back pay or reinstatement, but not both.
>
> Having sought and been awarded reinstatement, he cannot now seek back pay as well. Should he attempt to do so, we will be left with no choice but to seek to reopen his bankruptcy case, seek revocation of his bankruptcy discharge, and raise our defenses to the back pay request, including estoppel and waiver of the same, to the bankruptcy court.

UAW App'x at 10. In response, Petrzelka stated that UAW was the possessor of the claim against EMC and held the property rights to it. Petrzelka stated that UAW would "decide how to allocate any future award of back pay or benefits," and that because Chapman did not have an ownership interest in or property right to such award, "he had no obligation to list any such claim in his bankruptcy schedules." EMC App'x at 133. Petrzelka also stated that "there was never any understanding on any of our part that . . . Chapman was required to elect his remedies by choosing either back pay or reinstatement, but not both." *Id.* at 133-34.

## *VI. ANALYSIS*

EMC asks that the court grant the Motion because "UAW should be judicially estopped from pursuing its claim on behalf of Chapman" and because "the undisputed facts show that UAW is not entitled to arbitration." Motion at 1-2 (formatting omitted). UAW argues that the court should deny the Motion because "judicial estoppel does not apply" and "the undisputed facts establish that . . . UAW never waived its right to back pay and benefits, and that the right to seek such benefits was specifically preserved on the record." Resistance at 1-2 (formatting omitted).

### A. *Judicial Estoppel*

EMC argues that UAW is judicially estopped from pursuing Chapman's claim because Chapman did not disclose the claim in his bankruptcy proceeding. *See* Brief in Support of Motion at 4. UAW argues that it is not judicially estopped because Chapman disclosed the fact that UAW was seeking to have his job reinstated "which, by obvious implication, would include an effort to obtain back pay and benefits"; UAW, not Chapman, was the property holder of the grievance; and even if the court finds that judicial estoppel is appropriate, it only applies to Chapman's back pay and benefits that accrued prior to August 17, 2012, the date that Chapman filed his Chapter 7 bankruptcy petition. Resistance at 1-2.

"[T]he doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 679 (8th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (quotation marks omitted). "This doctrine 'protects the integrity of the judicial process.'" *Id.* (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006)). "Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Stallings*, 447 F.3d at 1047 (quoting *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.*, 4 F.3d 605, 609 (8th Cir. 1993)). "Although the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, the Supreme Court, in *New Hampshire v. Maine*, articulated a non-exhaustive list of three factors to aid a court in determining whether to apply the doctrine." *CRST Van Expedited, Inc.*, 679 F.3d at 679 (quoting *Stallings*, 447 F.3d at 1047) (quotation marks, citations and alterations omitted).

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether

> the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quoting *Stallings*, 447 F.3d at 1047). Therefore, under the doctrine of judicial estoppel, "a party that takes a certain position in a legal proceeding, 'and succeeds in maintaining that position,' is prohibited from thereafter assuming a contrary position 'simply because his interests have changed,' especially if doing so prejudices the party 'who acquiesced in the position formerly taken by him.'" *Stallings*, 447 F.3d at 1047 (quoting *New Hampshire*, 532 U.S. at 748).

Because Chapman was the party in the bankruptcy action, the court will first consider whether Chapman would be judicially estopped from pursuing this claim and then whether UAW should be judicially estopped.

### 1. *Judicial estoppel of Chapman*

"In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Stallings*, 447 F.3d at 1047. "A debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" *Id.* (quoting In re *Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004)).

Here, Chapman did not list any pending claims on his debtor's schedule and told the bankruptcy court,[2] in response to the question of whether he had the right to sue anybody for anything, that UAW "is fighting for my job back, that is the only thing." UAW App'x at 3. Chapman testified in a deposition that he believed this statement included the fact that UAW was seeking both reinstatement and back pay. *See* ECM App'x at 4-5 ("It's about the whole thing. It's the whole package . . . [M]y opinion of it is, it's my job and back pay. Because, otherwise, if it would have just been about my job, I would have never said anything, because I would never have had to. . . . It's including my back pay in the way I said it."). UAW argues that Chapman's disclosure encompassed both back pay and reinstatement and, furthermore, that Chapman was under no duty to disclose his claim because the claim belonged to UAW and it would have been improper for him to include such claim on his bankruptcy debtor's schedule. *See* Brief in Support of Resistance at 1-3.

EMC argues that Chapman's disclosure "is insufficient to thwart a finding of a clearly inconsistent position." Brief in Support of the Motion at 6 (citing *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289 (11th Cir. 2003)). In *Barger*, the Eleventh Circuit Court of Appeals found that the plaintiff was judicially estopped from pursuing an employment discrimination claim that she was pursuing at the time she filed her bankruptcy petition, but that she failed to list as an asset. *Barger*, 348 F.3d at 1294-96. However, the plaintiff in *Barger* was specifically asked by the bankruptcy trustee about "the monetary value of the lawsuit" and stated "that she only sought reinstatement of her previous position," not that she was also seeking back pay and other damages, even though she added claims for damages only two days prior to her meeting with the bankruptcy trustee. *See id.* at 1296.

---

[2] The bankruptcy court as represented by either Judge Collins or Trustee Huisinga.

11

Here, Chapman was not directly asked about the monetary value of his suit. Chapman stated that he viewed the phrase "fighting for my job back" as including both reinstatement and back pay, despite the fact that UAW eventually only ended up seeking reinstatement at that time. Complicating the issue further is the fact that Chapman and his attorney believed he did not have to disclose the grievance to the bankruptcy court because "the grievance was the property of . . . UAW," not Chapman. *See* UAW App'x at 1.

"A basic tenet of bankruptcy law is that all assets of the debtor, including all pre-petition causes of action *belonging to the debtor*, are assets of the bankruptcy estate that must be scheduled for the benefit of creditors." *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 52 (S.D.N.Y. 1999) (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)) (emphasis added). "A debtor has an uncompromising duty to disclose *whatever* ownership interests are held in property." In re *Tripp*, 224 B.R. 95, 98 (N.D. Iowa 1998). Undisclosed claims "do not revert to the debtor free of the claims of creditors." *Kunica*, 233 B.R. at 53. UAW argues that the claim did not belong to Chapman, because UAW "was the property holder of the grievance." Brief in Support of Resistance at 3. EMC argues that Chapman had a "clear statutory duty to disclose in his bankruptcy any potential assets to which he might be entitled." Brief in Support of Reply (docket no. 17-1) at 3. Neither party has pointed the court to any authority regarding whether a union member has a duty to disclose a grievance to a bankruptcy court when the union is the entity pursuing such grievance.

The court finds that the Eighth Circuit's discussion of union grievances in *Sheet Metal Workers Local No. 2 v. Silgan Containers Manufacturing Corporation* is instructive. In determining that a union could proceed to arbitration on a deceased worker's claim, the Eighth Circuit noted the fact that "employees do not have standing to bring an action against the employers . . . ." *Sheet Metal Workers Local No. 2 v. Silgan Containers Mfg. Corp.*, 690 F.3d 963, 969 (8th Cir. 2012).

> An employee . . . lacks the power to bring or arbitrate his or her own grievance, and instead must rely entirely on the [u]nion to do so. The [collective bargaining agreement] . . . empowers the [u]nion to exert significant and often exclusive control over the grievance process. Under the [collective bargaining agreement], if the employee and his immediate supervisors cannot satisfactorily resolve the employee's grievance, the [u]nion not only has discretion over whether to proceed further, but also takes control of the grievance process going forward.

*Id.* at 968-69. The court finds that this discussion of grievances supports finding that Chapman did not have to disclose the pending union grievance on his bankruptcy schedules because it was not his claim to pursue. Under the Labor Agreement and 29 U.S.C. § 185, UAW is empowered to "submit [a] grievance to arbitration for final and binding settlement" and "[t]he decision of the arbitrator shall be final and binding upon both parties to this [Labor] Agreement and upon any employee or employees involved in the dispute." EMC App'x at 77. It does not appear, and the parties have not argued, that Chapman would have been able to bring an independent claim if UAW had decided not to pursue arbitration or even decided to abandon its claim for back pay. Because the Labor Agreement did not permit him to bring a claim against EMC, the court finds that Chapman would not be judicially estopped in this action, even if he had been a named party in this suit.[3]

### 2. *Judicial estoppel of UAW*

In the alternative, even assuming judicial estoppel would prevent Chapman from seeking back pay, the question remains as to whether UAW is prevented from seeking

---

[3] EMC argues that past back pay awards have been paid directly to union members and UAW cannot, therefore, assert that it owns the claim. *See* EMC Brief at 12-13. However, the court does not have enough information to determine the process governing the distribution of back pay. Therefore, the court cannot determine ownership on this ground.

13

arbitration on the issue of back pay. To determine whether to invoke judicial estoppel against UAW in the instant action, the court looks to the statute governing suits by labor organizations and relevant case law. 29 U.S.C. § 185 provides that a labor organization may bring suit "for violation of contracts between an employer and a labor organization representing employees" and that "[a]ny such labor organization may sue or be sued as an entity and in behalf of employees whom it represents." 29 U.S.C. § 185. The Eighth Circuit has analyzed the issue of judicial estoppel in the context of the Equal Employment Opportunity Commission's ("EEOC") ability to bring suit when an individual plaintiff would be barred by judicial estoppel. The Eighth Circuit found that the EEOC could not be judicially estopped "from suing in its own name to correct . . . discriminatory employment practices . . . ." *CRST Van Expedited, Inc.*, 679 F.3d at 681 (emphasis omitted).

EMC argues that the EEOC's position is different from UAW's because "the EEOC has been charged by Congress with the task of correcting the discriminatory policies of employers and combat[]ing discrimination on the national level through its pursuit of individual claims. UAW has no such goal of vindicating the public interest or eliminating discrimination." Brief in Support of the Motion at 11-12. Although the court agrees that there are differences between UAW's position and the goals of the EEOC, the court finds that the Eighth Circuit's reliance on *E.E.O.C. v. Waffle House, Inc.* is instructive:

> If it were true that the EEOC could prosecute its claim only with [the employee's] consent, or if its prayer for relief could be dictated by [the employee], the [lower] court's analysis might be persuasive. But once a charge is filed, the exact opposite is true under the statute—the EEOC is in command of the process . . . . If . . . the EEOC files suit on its own, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit . . . . The statute clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate the strength of the public interest at stake.

*CRST Van Expedited, Inc.*, 679 F.3d at 682 (quoting *Waffle House, Inc.*, 534 U.S. 279, 291 (2002)). Additionally, the Eighth Circuit has found that a "[u]nion does not consider only the interests of the individual employee it represents . . . . In deciding whether to bring a grievance, for instance, the [u]nion considers not only whether the individual employee wishes to pursue that grievance, but also whether such a grievance is in the interests of the represented employees as a whole." *Sheet Metal Workers Local No. 2*, 690 F.3d at 969. Although not a perfect parallel, the similarities between the EEOC's function in representing an aggrieved employee is similar enough to a union's function in representing its members for the court to rely on such cases when determining whether to invoke judicial estoppel.

Here, UAW is authorized by statute to bring suit on behalf of its members. *See* 29 U.S.C. § 185. The Labor Agreement that governs the relationship between the parties provides for grievance and arbitration proceedings between UAW and EMC. *See* EMC App'x at 77 ("In the event that any grievance cannot be satisfactorily settled under the [grievance] procedure, the Union may submit such grievance to arbitration for final and binding settlement . . . ."). Judicial estoppel is meant to "protect the integrity of the judicial process" and is appropriate when a party takes inconsistent positions in judicial proceedings. *CRST Van Expedited Inc.*, 679 F.3d at 681. Here, UAW did not participate in Chapman's bankruptcy proceedings and did not make any representations to the bankruptcy court. The Labor Agreement provides that UAW has the right to pursue arbitration, irrespective of the actions of the union member. Conversely, UAW may choose to settle a claim on Chapman's behalf or abandon such claim without Chapman's input. These facts lead the court to conclude that judicial estoppel against UAW is unwarranted in the instant action because the factors for judicial estoppel are not present. UAW has not taken inconsistent positions, nor has it persuaded a court to adopt its

position. Finally, UAW does not stand to gain an unfair advantage should it prevail in the instant action.[4]

In light of the above discussion, the court is unconvinced that UAW should be judicially estopped from seeking back pay through arbitration due to Chapman's failure to disclose the claim to the bankruptcy court. Accordingly, the court shall deny the Motion with respect to EMC's judicial estoppel arguments.

### B. *Entitlement to Arbitration*

EMC argues that UAW is not entitled to arbitration because "EMC has already fulfilled its duty under the Labor Agreement to arbitrate Chapman's May 2012 discharge and that neither Chapman nor UAW on Chapman's behalf are entitled to any additional proceedings on the matter." Brief in Support of Motion at 13. EMC argues that the

> Labor Agreement . . . provides no avenue for a bifurcated arbitration proceeding or for subsequent arbitrations on the same matter after an initial arbitration has occurred. . . . . Moreover, even *if* (without admitting) an oral agreement was made between Visser and Petrzelka for bifurcation of the arbitration proceedings, such an agreement would be outside of and separate from the Labor Agreement, rendering it unenforceable under 29 U.S.C. § 185. As such, any claim under any oral agreement would be devoid of jurisdiction . . . .

*Id*. at 14. UAW argues that it "never waived its right to back pay and benefits, and that the right to seek such benefits was specifically preserved on the record." Brief in Support of Resistance at 4 (formatting omitted).

The Labor Agreement provides that:

---

[4] The instant action concerns UAW's petition to compel arbitration. Although the eventual result of arbitration could result in back pay and benefits for Chapman, this fact does not alter the court's determination that judicial estoppel of UAW would be inappropriate. The court does not address the propriety of any potential proceeding regarding Chapman's now-closed bankruptcy estate.

16

> In the event that any grievance cannot be satisfactorily settled . . . [UAW] may submit such grievance to arbitration for final and binding settlement within fifteen (15) workdays from receipt of [EMC's] . . . answer . . . .
>
> . . .
>
> The arbitrator shall have authority only to interpret and apply the terms and provisions of this Agreement and to decide the particular grievance submitted to him. . . . In the awarding of any back pay the arbitrator shall be required to offset any earning or benefits received by the employee during the interval covered by such award.
>
> . . .
>
> The decision of the arbitrator shall be final and binding upon both parties to this Agreement and upon any employee or employees involved in the dispute.

EMC App'x at 77. The parties engaged in arbitration regarding Chapman's termination, but the issue of back pay was not addressed at that time. Arbitrator O'Brien stated that "[o]n the issue of back pay, the parties have agreed that any award of back pay is beyond the scope of this arbitration and will be considered at another time and place, if necessary." UAW App'x at 7. EMC and UAW disagree over whether they entered into any oral agreement regarding how to address back pay, but EMC argues that UAW is not entitled to further arbitration regardless of any such agreement.

Although the court recognizes that the Labor Agreement does not expressly contemplate multiple arbitrations for a single grievance, the Labor Agreement also does not foreclose the possibility. The Labor Agreement authorizes arbitration for both reinstatement and back pay, and states only that "[t]he decision of the arbitrator shall be final and binding . . . ." EMC App'x at 77. The fact that Arbitrator O'Brien specifically noted that the issue of back pay "will be considered at another time and place, if necessary" and EMC did not object to such statement suggests that the parties may have agreed that further proceedings may be necessary to determine the issue. Accordingly,

17

Arbitrator O'Brien's decision was not "final and binding" with respect to the issue of back pay.

Neither party has identified any case law suggesting whether it was permissible to enter into an agreement to bifurcate arbitration proceedings under the Labor Agreement. The Eighth Circuit has recognized the use of bifurcated arbitration when the parties agree to such a process. *See Manion v. Nagin*, 392 F.3d 294, 299-300 (8th Cir. 2004); *see also Providence Journal Co. v. Providence Newspaper Guild*, 271 F.3d 16 (1st Cir. 2001) (upholding an arbitration decision where "the parties informally agreed to bifurcate the issues of liability and damages"); *see also McGregor Van De Moere, Inc. v. Paychex, Inc.*, 927 F. Supp. 616, 618 (W.D.N.Y. 1996) (addressing a scenario in which parties asked an arbitration panel to decide only the issue of liability and leaving the calculation of damages for a separate proceeding). Under the Labor Agreement, nothing prevented the parties from agreeing to bifurcate arbitration proceedings.[5] However, the court finds that there is a genuine issue of fact with respect to whether the parties entered into such an agreement. Visser stated that "[t]here was never an agreement nor a discussion . . . about bifurcating any proceedings." EMC App'x at 107, 109. Visser's May 8, 2013 Letter also reflected an understanding that UAW and EMC "must agree that Chapman may not, in any event, recover any remedy other than reinstatement through this limited arbitration." *Id.* at 114. However, Schnell's May 22, 2013 letter stated that UAW "does not agree to waive any claim to back pay under the arbitration remedy." UAW App'x at 4. Given Arbitrator O'Brien's statement that "[o]n the issue of back pay, the

---

[5] EMC argues that the court does not have jurisdiction under 29 U.S.C. § 185 to decide the issue. *See* Brief in Support of Motion at 14; Brief in Support of Reply at 4. Given that the issues of back pay and reinstatement arise under the Labor Agreement, the court fails to see how it lacks jurisdiction to determine whether the parties agreed to bifurcate arbitration proceedings. *See* 29 U.S.C. § 185 (granting jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization . . . .").

18

parties have agreed that any award of back pay is beyond the scope of this arbitration and will be considered at another time and place, if necessary," the court finds that there is a genuine issue of material fact with respect to whether the parties informally agreed to bifurcate arbitration proceedings or whether UAW waived the issue of back pay. *See id.* at 7. Accordingly, the court shall deny summary judgment with respect to whether UAW is entitled to additional arbitration.

## VII. CONCLUSION

In light of the foregoing, EMC's Motion for Summary Judgment (docket no. 13) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 26th day of March, 2016.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA